1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
2            ALEXANDRIA DIVISION

3   ------------------------------x
                                  :
4   UNITED STATES OF AMERICA,     : Criminal Action No.
                                  :
5            versus               : 1:22-cr-122
                                  :
6   JULIO R. SOTOMAYOR,           : July 21, 2022
                                  :
7            Defendant.           :
    ------------------------------x.

8
             TRANSCRIPT OF Arraignment hearing
9       BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.
             UNITED STATES DISTRICT JUDGE
10
                  A P P E A R A N C E S
11
    FOR THE GOVERNMENT:    EDWARD P. SULLIVAN, AUSA
12                         HEIDI B. GESCH, AUSA
                           United States Attorney's Office
13                         2100 Jamieson Avenue
                           Alexandria, VA 22314
14
    FOR THE DEFENDANT:     JONATHAN YORK, ESQ.
15                         Morgan, Lewis & Bockius LLP
                           111 Pennsylvania Avenue NW
16                         Washington, DC 20004

17                         JOHN J. PEASE, III, ESQ.
                           Morgan, Lewis & Bockius LLP
18                         1701 Market Street
                           Philadelphia, PA 19103
19

20

21  OFFICIAL U.S. COURT REPORTER:   MS. TONIA M. HARRIS, RPR
                                    United States District Court
22                                  401 Courthouse Square
                                    Fifth Floor
23                                  Alexandria, VA 22314

24

25

─────────────── United States v. Sotomayor ───────────────

2

1          **P R O C E E D I N G S**

2    (Court proceedings commenced at 10:13 a.m.)

3          THE COURTROOM CLERK:  Criminal No. 2022-122.  United

4    States of America versus Julio Sotomayor.

5          MR. SULLIVAN:  Good morning, Your Honor.  Edward

6    Sullivan and Heidi Gesch for the United States.

7          THE COURT:  Good morning.

8          MS. GESCH:  Good morning.

9          MR. PEASE:  Good morning, Your Honor.  John Pease

10   and Jonathan York on behalf of the defendant, Mr. Sotomayor.

11         THE COURT:  Good morning, sir.  As I always do at

12   the beginning of any docket is I try to, as best as I can,

13   explain the protocols in place while we're working our way

14   through the pandemic of 2019.

15         Counsel, if you're fully vaccinated, you can address

16   the Court without the benefit of the masks, if you're

17   comfortable doing so.  If you would prefer to wear a mask,

18   that's fine too.  I will note that sometimes it's a little

19   difficult for the court reporter to understand people when

20   you're speaking through a mask.  So you can do what you like,

21   but feel comfortable not wearing a mask.  I think we're in

22   pretty good shape.  Everyone has followed the attestations

23   indicating that they've met the requirements of the general

24   orders of the Eastern District of Virginia regarding

25   vaccination and masks.

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

─────────────United States v. Sotomayor─────────────

3

1          As I understand, there's a few things that we need

2    to do before we actually get into the substantive matters.

3    There's a pro hac vice motion, I believe, that has been filed.

4          MR. YORK:  Yes, Your Honor, that's correct.

5          THE COURT:  Okay.  And are you the person filing the

6    motion or are you the person who is the beneficiary of the

7    motion?

8          MR. YORK:  I am filing the motion, Your Honor.

9          THE COURT:  Okay.  Is there any objection by the

10   government?

11         MR. SULLIVAN:  No, Your Honor.

12         THE COURT:  As I understand the rules, sir, the

13   responsibility for you is to be present with the pro hac vice

14   admittee anytime that he's before the Eastern District of

15   Virginia, not because I believe that this particular

16   individual is incompetent or incapable of representing its

17   client, but those are the rules.  And so, we try to adhere to

18   the rules.

19         So it would be the preference of the Court that

20   anything that he files or anything that he does or any

21   appearance that he makes in court, that you're here with him.

22   Not to hold his hand but to be support for him as he works his

23   way through the rocket docket.

24         MR. YORK:  Absolutely.

25         THE COURT:  Very good.  All right.  That motion will

─────────────────United States v. Sotomayor──────────────

4

1    be granted.

2              We need to go ahead and formally arraign

3    Mr. Sotomayor.  Do you want your client formally arraigned?

4              MR. PEASE:  Your Honor, we're prepared, we read the

5    indictment.  We're prepared to enter a plea of not guilty.

6              THE COURT:  Okay.  Very good.

7              Mr. Sotomayor, there's an indication through your

8    counsel that he does not want to have you formally arraigned.

9    Formally arraigned is essentially me telling you what the

10   charges are against you and the punishment that could incur if

11   you're found guilty of the offense, but I'm sure that your

12   counsel has gone over all of that with you and that you

13   understand the proceeding.

14             And he says that you want to waive formal

15   arraignment, is that your desire, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Thank you, sir.

18             THE DEFENDANT:  Thank you, sir.

19             THE COURT:  All right.  The Court is granting the

20   motion for pro hac vice, so, granted.

21             All right.  We need to go ahead and set this matter

22   for trial.  Have you all spoken about how long it will take

23   you to present the matter?

24             MR. SULLIVAN:  Your Honor, we haven't had a chance

25   to confer specifically about the duration of the government's

─────────────────── United States v. Sotomayor ───────────────────

5

1   case, but I would anticipate a week or two, at most, subject

2   to the stipulations to try to expedite and accelerate this

3   into a one-week trial.

4          THE COURT:  How many witnesses do you anticipate?

5          MR. SULLIVAN:  Right now I would say roughly 10 to

6   12.  So I think it could be done shorter, in a relatively

7   shorter amount of time.

8          THE COURT:  Let me give you a factor that you might

9   not be aware of.  This Court has had the opportunity to

10  resolve several criminal matters, even during the pandemic,

11  and we've come up with a process or a protocol which

12  streamlines the voir dire process significantly.  And I think

13  the longest that this Court has taken to seat a jury, and I

14  make reference, again, to a case I did just two weeks ago, is

15  about two hours for voir dire.  We get it done in two hours.

16  And I think it's a benefit of the questionnaire that we send

17  out in advance of the trial basically pairing down the people

18  who just don't want to be here because of their concerns about

19  the pandemic.  So we've done a really good job getting through

20  the voir dire process.  And so, we were able to get through

21  the voir dire process in three hours and be able to start the

22  trial on the same day as far as opening statements and the

23  like.

24         How long would you anticipate, about a week?

25         MR. SULLIVAN:  Again, I think it would be, roughly,

─────United States v. Sotomayor─────

6

1   maybe four days or so to present the government's case.  So

2   all together a week with some flexibility because we have not

3   talked about stipulations or things that would streamline a

4   fairly document intensive case.

5           THE COURT:  Counsel, what do you think on your side

6   of the ledger, how long do you think you're going to need for

7   your witnesses?

8           MR. PEASE:  Your Honor, it's very difficult right

9   now to determine the extent of which we're going to have any

10  witnesses at trial.  We expect we will.  But, you know, if I

11  had to -- if you had to push me right now, I would say a day.

12          THE COURT:  That's fair.  I'm just trying to sort of

13  get a sense for the Court's docket and how I can sort of

14  schedule things around what we need to do in this case.

15  Obviously, we'll take the time that we need to get it done.

16          MR. SULLIVAN:  And, Your Honor, I was going to say

17  that I have conferred with my co-counsel on the government's

18  side.  So we are relatively open in 2023, but I think there's

19  a preliminary question about whether this is going to remain

20  on the speedy trial docket or not.

21          THE COURT:  Are you making a suggestion that the

22  complex nature of the case will affect any speedy trial

23  implications?

24          MR. SULLIVAN:  I do think it is a complex case given

25  the amount of discovery, but it's really, I think, for defense

─────United States v. Sotomayor─────

7

1   counsel to decide how he wants to proceed on that.

2           THE COURT:  Counsel, your opponent colleague has

3   suggested that there's some degree of complexity in the

4   government's case which might implicate the running of the

5   speedy trial calendar.  Obviously, it is up to you to decide

6   whether or not, first of all, if you agree with the statement

7   of the complexity of the case.  Number two, whether you're in

8   a position to waive speedy trial if we were to go out say into

9   2023.

10          MR. PEASE:  Yes, Your Honor.  I've had some initial

11  talks with Mr. Sullivan about that and he has represented to

12  me that there are significant volume of discovery to be

13  produced in this case.  In reviewing the indictment, and based

14  on my own experience, I would anticipate a significant volume

15  and that it would meet the requirements of a complex case.

16  And so, we will waive our speedy trial and --

17          THE COURT:  Let me go ahead and have the deputy

18  clerk hand this form down to you, take a look at it, and you

19  can confer with your client, and then if you're comfortable,

20  you can indicate that and we can go ahead and set the trial.

21          MR. PEASE:  Thank you, Your Honor.

22          (Counsel and Defendant confers.)

23          THE COURT:  The Court has observed counsel and

24  Mr. Sotomayor review the waiver of speedy trial document.  The

25  Court observed counsel answer any questions that may have been

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA

──────United States v. Sotomayor──────

8

1  evident because of the decision to waive speedy trial.  And

2  the Court observed Mr. Sotomayor endorse the waiver of speedy

3  trial after consultation with his counsel.

4          Is that a fair recollection of the event, sir?

5          MR. PEASE:  Yes, it is, Your Honor.

6          THE COURT:  The Court will incorporate the speedy

7  trial waiver and the court documents.

8          Having done that, okay, sir, for being out of town

9  you might not understand, I've got a whole lot of availability

10 in 2023, because most of my cases are in 2022.  We move things

11 pretty quickly here.  So I've got a lot of availability.  So

12 if you want the second week of January, I can do that.  Third

13 week of January I can do that.

14         What's your preference?

15         MR. SULLIVAN:  I think we would propose the third

16 week or perhaps even the end of January given the holiday

17 schedule, but we're available January or February.

18         THE COURT:  How about starting on January 23, 2023.

19 It makes it easy for everyone to remember because there's a

20 lot of 23s.  January 23, 2023, and we'll go ahead and book you

21 through the 31st of January.  That gives you seven business

22 days to get matters done.  If you meet and you're able to come

23 with some stipulations, which you believe will streamline the

24 case, we can remove a couple of days from the docket.  But

25 let's go from January 23, 2023 to January 31, 2023.

──────United States v. Sotomayor──────

9

1          All right.  Have we talked discovery orders at all?

2          MR. SULLIVAN:  Your Honor, we have.  We've provided

3    defense counsel with the standard discovery order for the

4    district.  I think we're in the process of getting a

5    resolution on that.  I anticipate that immediately after the

6    arraignment hearing the government will submit something to

7    the Court through the ECF system.

8          THE COURT:  Let's have a date certain on that.

9    Let's get something submitted no later than close of business,

10   August 1st.

11         MR. SULLIVAN:  As far as completing discovery orders

12   or submitting the discovery order.

13         THE COURT:  Discovery order.

14         MR. SULLIVAN:  Okay.  We anticipate doing it over

15   the next day or so.

16         THE COURT:  Okay.  All right.  The law clerk who is

17   responsible for this case is Mr. Golden.  Marlan, raise your

18   hand.  If you need to communicate with the Court through

19   anyway, just go through Mr. Golden.  He's very good at what he

20   does.

21         MR. SULLIVAN:  Secondly, Your Honor, just to give

22   the Court a heads up, we anticipate filing a motion for a

23   protective order that hopefully will be by consent with

24   defense counsel.  The purpose of the protective order is

25   because of the volume of discovery.  I do like to try and be

─────────United States v. Sotomayor─────────

1    comprehensive early in the production, including early

2    production of Jencks material.  The material, though, has a

3    lot of personal identifying information and sensitive

4    proprietary information because it's a procurement-related

5    case.  And so, the protective order we'll just provide a

6    parameter about how the parties can use and disseminate the

7    information.

8              THE COURT:  Counsel, you don't anticipate any

9    difficulty with that, do you?

10             MR. PEASE:  Not at all.  I've talked with

11   Mr. Sullivan.  I think we've reached an agreement.

12             THE COURT:  Very good.  Okay.  I think the next

13   thing that we need to do is evaluate his conditions of

14   pretrial release.  We have someone from the probation

15   department that's provided an addendum to pretrial services.

16   It appears that things are going in the right direction.

17             Does the government have any desire to change the

18   conditions of bond?

19             MR. SULLIVAN:  No, Your Honor.  We defer to the

20   Court about -- we would propose an unsecured bond, as far as

21   the amount.  Again, we defer to the Court about that.

22             THE COURT:  Okay.

23             MR. PEASE:  Yes, Your Honor.  The one concern -- one

24   area that we have a disagreement with the recommended

25   conditions relates to the condition that Mr. Sotomayor no

United States v. Sotomayor

11

1  longer be involved in running his business.  He's -- he

2  operates a sole proprietorship.  It's the source of income for

3  him and his family.  He employs his wife and two children.

4  And there's a recommendation in the pretrial services report

5  that he no longer be permitted to work.

6          THE COURT:  What is the nature of his business?

7          MR. PEASE:  He is -- basically he provides

8  consulting administrative services in connection with

9  contractors.  He's basically subcontracting services to

10  businesses that have government contracts.  He's -- he was

11  with the U.S. Air Force for 30 years.  He retired as a

12  colonel.  And since that time, he's been working in various

13  functions.  He has a masters degree in industrial engineering.

14          THE COURT:  Is any of his business implicated -- I'm

15  trying to be delicate as I ask this question -- is any of his

16  business dealings implicated by the nature of the offense that

17  he's charged with?

18          MR. PEASE:  So the indictment, Your Honor, charges

19  bribery and services fraud in connection with the government

20  contracting officer who left government service in 2017.  So

21  the allegations in the indictment relate to conduct that

22  allegedly occurred between 2014 -- 2013 and 2017.  The

23  contract, as I understand it, sense this contracting officer

24  left government service, it's my understanding that there had

25  been additional contract modifications since that time and

─────United States v. Sotomayor─────

12

1  that services by one of the companies are still being

2  provided.  That the Air Force continues to award contracts,

3  even though the alleged conduct ended five years ago.  So our

4  contention is the charges in this case relate to conduct five

5  to eight years ago and should not preclude -- and, of

6  course -- and one condition of pretrial release is going to be

7  that he's not to engage in any criminal conduct.  To the

8  extent the government has concerns about ongoing issues or

9  conduct, I think those are already addressed by what the

10 standard conditions of release --

11         THE COURT:  What are the revenues that Mr.

12 Sotomayor, on a yearly basis, generates through his business

13 deals -- his current business deals?

14         MR. PEASE:  May I check with my client, Your Honor?

15         THE COURT:  Sure.

16         (Counsel and Defendant confers.)

17         MR. PEASE:  So, Your Honor, it's my understanding

18 that it varies.  During COVID, it was very minimal.  Last year

19 Mr. Sotomayor estimates business revenues were approximately

20 $1 million in gross receipts.

21         THE COURT:  And you say he has his wife employed and

22 his two children are employed by the company?

23         MR. PEASE:  Yes.  That's right, Your Honor.

24         THE COURT:  Are these adult children?

25         MR. PEASE:  Yes.

─────────────────United States v. Sotomayor─────────────────

1    THE COURT:  I'll hear from the government.  You know

2  the bottom line is in these cases, Mr. Sullivan, there's a

3  presumption of innocence until he's proven guilty beyond a

4  reasonable doubt.  And as counsel has indicated that, as far

5  as he knows, there are no circumstances implicating the

6  foundation of the alleged offense with what Mr. Sotomayor is

7  doing now.  And I'm not of the mind to essentially make his

8  family destitute because of their inability to run their

9  company unless you can provide me with something else to

10  suggest that that's something you're concerned about.

11    MR. SULLIVAN:  Thank you, Your Honor.  We appreciate

12  the Court's concern and understand the point that the Court is

13  making.  Our concern is twofold.  One, while serving as a

14  subcontractor consultant to a company referred to as Company B

15  in the indictment, that it has been ongoing performance.  But

16  our point is that there was bribery and corruption and fraud

17  at inception.

18    Our concern is also that it's our understanding that

19  Mr. Sotomayor's entire business model revolves around

20  DOD-related contracts that, to a certain extent, involve

21  Company B.  We have an ongoing investigation about some of

22  these other contracts and what we propose to defense counsel

23  is that if Mr. Sotomayor has other contracts that don't

24  involve the BBG or the Department of Defense, then I think we

25  would be agreeable to him working on those contracts.

─United States v. Sotomayor─

14

1          Our concern, though, is just continuing to work on

2    contracts that may be tainted by fraud and potentially

3    corruption.

4          THE COURT:  Well, how much, from the government's

5    perspective, is at stake here if the defendant is found

6    guilty?

7          MR. SULLIVAN:  With respect to how much he made from

8    the contracts?

9          THE COURT:  Yes.

10          MR. SULLIVAN:  So during, as eluded to in the

11    indictment or alleged in the indictment, during the time

12    period involving the contracting officer, Diane Sturgis, it

13    looks like Mr. Sotomayor received 5- to $6 million.  The

14    contract has been ongoing since 2017.  It's my understanding

15    it was ongoing at least through 2020, and may still be

16    ongoing.  So I think it's well in the worth of 5 to 6 million.

17          THE COURT:  Let me ask you this, setting aside the

18    nature of the complaint, has there been any suggestion that

19    Mr. Sotomayor's company has failed to perform under the

20    contract?

21          MR. SULLIVAN:  There has been performance by Company

22    B and by extension the defendant.  The defendant serves as a

23    consultant and contract or subcontractor to Company B.

24          Our concern, though, is we have evidence indicating

25    that there may be fraud in connection, not just with the

─────United States v. Sotomayor─────

15

1   contract alleged in the indictment, but with other DOD-related

2   contracts.  We haven't had a chance to sit down with defense

3   counsel to go through some of that information, which is why

4   though we propose that if he has other contracts that don't

5   involve DOD or the Broadcasting Board of Governors, then I

6   think we would be perfectly comfortable with him working on

7   those contracts.

8                 THE COURT:  All right.  Well --

9                 MR. PEASE:  May I respond, Your Honor?

10                 THE COURT:  You may.

11                 MR. PEASE:  Your Honor, as Mr. Sullivan has

12   explained, the Air Force is apparently satisfied enough with

13   the work performed under these contracts.  And for the last

14   five years it continues to work with the same company.  The

15   government, and presumably these agencies, are aware of this

16   case, of the issues, and the nature of the charges.  And to

17   the extent there are concerns about that, there's an

18   administrative and department process that exists that the

19   government, if it decided there wasn't performance or for any

20   other reason, including the existence of the charges in this

21   case, can take action to suspend Mr. Sotomayor's ability to

22   perform or be involved in any of these contracts.

23                 I think, as you mentioned, the presumption of

24   innocence here and the lack of any criminal allegations that

25   the nature of this conduct is anywhere recent than five years,

─────────────United States v. Sotomayor─────────────
16

1    suggests that Mr. Sotomayor should not be denied the ability

2    to work at this time.

3            THE COURT:  Well, on balance, I believe that the

4    presumption of innocence works to Mr. Sotomayor's benefit.

5    He's got counsel now, and I'm sure that counsel will sit down

6    with Mr. Sotomayor and make sure that his approach to his

7    business will be as sterile as it can be under the

8    circumstances because of, as you pointed out, the

9    responsibility to adhere to the rules and not violate the laws

10   of the United States or the Commonwealth of Virginia.  So I'm

11   going to go ahead and allow him to work.

12           But what I'm going to do with you counsel is request

13   that you have a really good sit down with him and let him know

14   that this is not a carte blanche to do anything that he

15   chooses to do in the nature of his business.  And if anything

16   is close to the line, he either needs not to be involved or

17   get one of his family members to be the lead person as far as

18   resolution of any issues associated with any contract that may

19   be implicated either directly or indirectly with what he's

20   charged with.

21           MR. PEASE:  Understood, Your Honor.

22           THE COURT:  I'll leave it to your good office to do

23   that.  So I will allow him to continue to work.  I think the

24   concern is number 5, no self-employment and all employment

25   must be approved in advance by pretrial services.  That is the

─────────── United States v. Sotomayor ───────────

17

1    one that you're concerned with?

2          MR. PEASE:  Yes, it is, Your Honor.  There's another

3    as well that I would like to discuss.

4          THE COURT:  Not open any new lines of credit.

5          MR. PEASE:  No.  The other concern is that his

6    travel be restricted to the Metropolitan D.C. area.  As a

7    result of the work he is doing, he has reason to need to

8    travel throughout the U.S.

9          THE COURT:  Would he be leaving the country?

10         MR. PEASE:  No.  He's prepared to surrender his

11   passport and he understands he will not be permitted to leave

12   the United States.

13         THE COURT:  What areas are we talking about?  Are we

14   talking about the East Coast or are we talking about more?

15         MR. PEASE:  To my understanding throughout the

16   country.  He owns a property in Texas.  He performs -- his

17   children -- one lives in Louisiana.  He has another daughter

18   in the Hampton Roads area in Virginia.  He needs to travel to

19   Philadelphia to my office to meet with me.

20         THE COURT:  Does he have any criminal record?

21         MR. PEASE:  He has no criminal record, Your Honor.

22   None.  30 years of service.  He retired as a colonel.  He has

23   an unblemished record.

24         THE COURT:  All right.  Well, again, the presumption

25   of innocence works to your client's advantage and so I will

────────────── United States v. Sotomayor ──────────────

18

1    allow him to travel within the United States of America.

2           Where is his passport?

3           MR. PEASE:  It's on his person.  He has it.

4           THE COURT:  Why don't we go ahead and -- does the

5    probation office take that or does the United States take

6    that?

7           MR. SULLIVAN:  It would go to pretrial services, but

8    what I would propose, because I have run into this issue, it

9    is sometimes very difficult to get the passport back at the

10   end of the process.  I'm okay if defense counsel wants to hold

11   the passport for --

12          THE COURT:  Okay.  He's an officer of the court.

13   So, sir, we're going to let you be the custodian of the

14   passport.

15          MR. PEASE:  Thanks.  Okay, Your Honor.  Thank you.

16   Yes.

17          THE COURT:  All right.  Do you have the passport

18   with you, Mr. Sotomayor?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Okay.  Hand it to counsel.  And Counsel,

21   you now understand your obligation with regard to that?

22          MR. PEASE:  I do, Your Honor.

23          THE COURT:  Thank you.  All right.

24          MR. SULLIVAN:  Just lastly, Your Honor, on the

25   conditions.  It's still unclear to us whether he has notified

─────United States v. Sotomayor─────

19

1　employers, including the DOD and the Broadcasting Board of

2　Governors regarding the charges.  It sort of dovetails as to

3　--

4　　　　　THE COURT:  As I understand the way that works is

5　he's got an obligation to do that under the rules and the

6　process for him being de-authorized, for lack of a better way

7　of doing it, is a very long and cumbersome process, but the

8　process starts with him putting them on notice that he has got

9　some circumstances that may be of concern to the contract.

10　　　　　MR. SULLIVAN:  Understood.  Thank you.

11　　　　　THE COURT:  So make sure he understands that,

12　Counsel.

13　　　　　MR. PEASE:  Yes, Your Honor.

14　　　　　THE COURT:  All right.  We're going to amend the

15　previous conditions of setting conditions of release.  What

16　you'll see on the form, sir, is the condition 5 that had been

17　previously incorporated, we're going to strike through that.

18　　　　　THE DEPUTY CLERK:  You want me to cross these out?

19　　　　　THE COURT:  Just redo it.  Make it cleaner.

20　　　　　The deputy clerk has to do some administrative

21　things which will take a couple three minutes, so.  This is a

22　due process form that typically is provided in the initial

23　arraignment in front of the magistrate judge, but because

24　we're doing it here, he needs to sign it here.

25　　　　　(Counsel and Defendant confers.)

─────────────────────United States v. Sotomayor─────────────────────

20

1              (A pause in the proceedings.)

2              THE COURT:  Mr. Sotomayor, these are the conditions

3    of pretrial release.  Review them with your counsel.  And if

4    they are satisfactory to you, those are the obligations that

5    you're adherent to.

6              (Counsel and Defendant confers.)

7              THE COURT:  Counsel, we're going to put one more

8    interlineation on it.  We need to put a date on it.  It

9    doesn't affect anything, but we need to date it.

10             Mr. Sotomayor, do you understand the conditions of

11   pretrial release and are you willing to remain adherent to

12   those things?

13             THE DEFENDANT:  Certainly.

14             THE COURT:  Make sure that you stay in contact with

15   the probation department and essentially anything that they

16   tell you to do, it is your obligation to do.  Pretrial release

17   is grace.  And so, you don't get to negotiate or anything like

18   that.  You have to do what the probation officer tells you to

19   do, as long as it's reasonable and legal.

20             Do you understand that, sir?

21             MR. PEASE:  Affirmed, sir.

22             THE COURT:  All right, sir.  Thank you.  You may

23   have a seat.  Is there anything else we need to do?

24             MR. SULLIVAN:  Not from the government.  Thank you.

25             MR. PEASE:  Thank you, Your Honor.

United States v. Sotomayor

21

1          THE COURT:  All right.  We welcome you in your pro

2     hac vice motion.  It will give you an opportunity to say that

3     you practiced in the rocket docket and experienced all the

4     benefit and grace that it provides.

5          MR. YORK:  I'm looking forward to it, Your Honor.

6     Thank you.

7          THE COURT:  Okay.  We're adjourned.

8

9          **(Proceedings adjourned at 11:08 a.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    <u>CERTIFICATE OF REPORTER</u>

2

3              I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported by machine shorthand, in my official capacity, the

6     proceedings had and testimony adduced upon the Arraignment

7     hearing in the case of the **UNITED STATES OF AMERICA versus**

8     **JULIO R. SOTOMAYOR,** Criminal Action No.: 1:22-cr-122, in

9     said court on the 21st day of July, 2022.

10             I further certify that the foregoing 22 pages

11    constitute the official transcript of said proceedings, as

12    taken from my machine shorthand notes, my computer realtime

13    display, together with the backup tape recording of said

14    proceedings to the best of my ability.

15             In witness whereof, I have hereto subscribed my

16    name, this August 30, 2022.

17

18

19

20

21    _____
      Tonia M. Harris, RPR
22    Official Court Reporter

23

24

25

                                                              22