IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>JULIO R. SOTOMAYOR<br>(a/k/a "JACE SOTOMAYOR"; "J.R.<br>SOTOMAYOR"; "WIZARD"),<br><br>       Defendant. | Criminal No. 1:22-CR-00122 (RDA) |

**DEFENDANT JULIO R. SOTOMAYOR'S MOTION TO COMPEL PRODUCTION
PURSUANT TO RULE 16 AND BRADY V. MARYLAND**

Defendant Julio R. Sotomayor ("Col. Sotomayor") respectfully requests that the Court order the government to produce transcripts of grand jury testimony pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States,* 405 U.S. 150 (1972). Col. Sotomayor also respectfully requests that the Court, in its discretion as a matter of case management, order the government to identify all materials with exculpatory information and all other known *Brady* materials it has produced, and will produce, in this matter. In support of this motion, Col. Sotomayor states:

1.      On July 29, 2022, counsel for Col. Sotomayor made the initial discovery request to the government, asking for any and all discovery materials in connection with the case. On August 23, 2022, undersigned counsel made a follow-up discovery request, specifically seeking materials under Federal Rules of Criminal Procedure 12, 16; 18 U.S.C. § 3500 (the "Jencks Act"); and *Brady v. Maryland, 373 U.S. 83 (1963)* and its progeny including *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Agurs*, 427 U.S. 97 (1976). In particular, counsel asked that the

government provide all transcripts of grand jury testimony that were relevant to the charges in the indictment.

2. To date, the government has not provided grand jury transcripts of the testimony from key witnesses in the matter, which Col. Sotomayor has a good-faith basis to believe contain exculpatory and impeachment evidence discoverable under *Brady* and *Giglio*.

3. In addition, the four productions made by the government so far are voluminous. The productions total over 335,000 documents representing over one million pages of material and Col. Sotomayor anticipates more productions in the near future. While the government has provided Microsoft Excel spreadsheets it has labeled "production logs," the spreadsheets are very difficult to search and navigate, consisting of between 53 and 57 columns of data for each document and accounting for over 12.35 million separate datapoints.

4. On October 13, 2022, counsel for Col. Sotomayor requested that the government identify materials in the first three productions, and all productions going forward, with exculpatory information and all other known *Brady* materials. Counsel noted factual circumstances that would warrant identification of these materials. On October 20, 2022, the government denied this request.

WHEREFORE, for the reasons stated in the accompanying Memorandum of Law, Col. Sotomayor respectfully requests that this Court order the production of the transcripts of grand jury testimony sought to be compelled and identify all materials with exculpatory information and all other known *Brady* materials it has produced, and will produce, in this matter.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  October 31, 2022 | /s/ *John J. Pease III* <br> John J. Pease III <br> Morgan, Lewis & Bockius LLP <br> 1701 Market Street <br> Philadelphia, PA 19103 <br> Telephone: (215) 963-5000 <br> Facsimile: (215) 963-5001 <br> john.pease@morganlewis.com <br><br> Jonathan P. York <br> 1111 Pennsylvania Avenue NW <br> Washington, DC 20004 <br> Telephone: (202) 739-3000 <br> Facsimile: (202) 739-3001 <br> jonathan.york@morganlewis.com <br><br> Attorneys for Defendant |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>JULIO R. SOTOMAYOR<br>(a/k/a "JACE SOTOMAYOR"; "J.R.<br>SOTOMAYOR"; "WIZARD"),<br><br>      Defendant. | Criminal No. 1:22-CR-00122 (RDA) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JULIO R. SOTOMAYOR'S
MOTION TO COMPEL PRODUCTION
<u>PURSUANT TO RULE 16 AND BRADY V. MARYLAND</u>**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Maryland*,
　373 U.S. 83 (1963) ................................................................................................................. *passim*

*Giglio v. United States*,
　405 U.S. 150 (1972) ..................................................................................................... 1, 2, 8, 12

*United States v. Agurs*,
　427 U.S. 97 (1976) ....................................................................................................................1, 8

*United States v. Blankenship*,
　No. 5:14-CR-00244, 2015 WL 3687864 (S.D. W. Va. June 12, 2015) ............................. 14, 17

*United States v. Bortnovsky*,
　820 F.2d 572 (2d Cir. 1987) ........................................................................................................18

*United States v. Contech Engineered Solutions, LLC*,
　No. 5:20-CR-481-FL-2, 2021 WL 714991 (E.D.N.C. Feb. 18, 2021) ....................................13

*United States v. Cutting*,
　No. 14-CR-00139-SI-1, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) ....................................13

*United States v. Hsia*,
　24 F. Supp. 2d 14 (D.D.C. 1998) ........................................................................................13, 17

*United States v. Saffarinia*,
　424 F. Supp. 3d 46 (D.D.C. 2020) .......................................................................................... *passim*

*United States v. Salyer*,
　No. CR. S-10-0061-LKK, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) ....................... *passim*

*United States v. Skilling*,
　554 F.3d 529 (5th Cir. 2009), *aff'd in part, vacated in part, remanded*, 561
　U.S. 358 (2010) .........................................................................................................................13, 18

*United States v. Thomas*,
　981 F. Supp. 2d 229 (S.D.N.Y. 2013) ........................................................................................18

**Statutes**

18 U.S.C. §§ 201(b)(1–2) ................................................................................................................7

18 U.S.C. § 371 ................................................................................................................................7

18 U.S.C. §§ 1343, 1346, and 2 ...................................................................................................7

18 U.S.C. § 3500 ....................................................................................................1, 8, 10, 12, 17

**Other Authorities**

Federal Rules of Criminal Procedure Rule 12 ..............................................................................1

Federal Rules of Criminal Procedure Rule 16 ....................................................................1, 4, 12

I.     **INTRODUCTION**

On July 6, 2022, the grand jury returned an indictment charging defendant Colonel Julio R. Sotomayor ("Col. Sotomayor") with conspiracy to commit bribery, bribery, and honest services wire fraud in violation of 18 U.S.C. § 371, 18 U.S.C. §§ 201(b)(1–2), and 18 U.S.C. §§ 1343, 1346, and 2, respectively. Dkt. No. 1. The government contends that Col. Sotomayor conspired with and paid bribes to Diane Sturgis, a former contract specialist and contracting officer for the Broadcasting Board of Governors ("BBG"), between 2014 to 2017.[1] Diane Sturgis has pleaded guilty to two counts of conspiracy to commit bribery and honest services wire fraud in two other matters in the Eastern District of Virginia. *See* Case No. 1:20-cr-00158-LO; Case No. 1:21-cr-00282-LO. At bottom, testimony from key witnesses, including Diane Sturgis, about this alleged conspiracy underlies the basis for the conduct charged in the indictment and is vital to Col. Sotomayor's defense.

On July 21, 2022, the Court issued its Standing *Brady* Order that directed the government to adhere to its disclosure obligations set forth in *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny (collectively "*Brady*"). Dkt. No. 13. The Court also set the trial date for January 23, 2023, which is now, at the time of filing, only two and a half months away. Dkt. No. 11.

Since August 9, 2022, the government has made four voluminous, productions, totaling over 335,000 documents representing over one million pages of material. The productions include materials that have been developed over seven years, beginning with a Department of State Office of Inspector General (OIG) investigation in 2015 and continuing to the present. A large portion of the productions consists of electronic communications from various parties in response to subpoenas, including a multi-year production of Diane Sturgis' government email account as well

---

[1] The BBG, now known as the U.S. Agency for Global Media, is an independent federal agency that oversees public service media networks, including Voice of America.

as .pst files of email communications and attachments that have not been processed, bates stamped, or organized in any way by the government. The productions have also included the Federal Bureau of Investigation (FBI), OIG, and Department of Justice's (DOJ) case files from the investigation. Most of the discovery materials are either spam or otherwise irrelevant to the conduct charged in Col. Sotomayor's indictment.

Accompanying these productions, the government has provided Microsoft Excel spreadsheets that list all the metadata for each document. The government has labeled these spreadsheets "production logs." The spreadsheets are very difficult to search and navigate, consisting of between 53 and 57 columns of data for each document and accounting for over 12.35 million separate datapoints.

On July 29, 2022, counsel for Col. Sotomayor made the initial discovery request to the government, asking for any and all discovery materials in connection with the case. On August 23, 2022, undersigned counsel made a follow-up discovery request, specifically seeking materials under Federal Rules of Criminal Procedure ("Rules") 12, 16; 18 U.S.C. § 3500 (the "Jencks Act"); and *Brady* and its progeny including *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Agurs*, 427 U.S. 97 (1976).[2] In particular, counsel asked that the government provide all transcripts of grand jury testimony and interview memoranda (i.e., FD-302s) that were relevant to the charges in the indictment.

To date, the government has not provided grand jury transcripts of the testimony from key witnesses in the matter, which Col. Sotomayor believes to contain exculpatory and impeachment evidence discoverable under *Brady*. Further, the government has declined counsel's request to identify materials with exculpatory information and all other known *Brady* materials in its

---

[2] Counsel notes that, while this letter is dated August 22, 2022, the letter was sent to the government on August 23, 2022. *See* Exh. C.

voluminous productions. The government's withholding of key testimony and its needle in a haystack approach to discovery has hindered Col. Sotomayor's counsel ability to provide effective representation, with trial in this matter rapidly approaching.

## II.     RELEVANT BACKGROUND

Col. Sotomayor is a decorated 30-year veteran of the United States Air Force. He continues to serve his country as a civilian by providing his breadth of knowledge, experience, and expertise to the Air Force and government contractors that provide services to the Air Force. Col. Sotomayor is the sole proprietor of two limited liability companies, Eagle Market Group, LLC ("EMG"), and Federal Security Agency, LLC ("FSA"), and provides his services to the Air Force and government contractors through these companies. He is an individual defendant in this matter and has only been able to access the discovery materials developed in the government's investigation after his indictment.

On July 29, 2022, counsel for Col. Sotomayor made their initial request for discovery materials to the government. The request letter is attached as Exhibit A. The government made its first two document productions on August 9, 2022 and provided two production logs. The government's first production letter is attached as Exhibit B. The first two productions contained 212,251 documents accounting for over 800,000 pages of material. The productions included email communications and attachments from Diane Sturgis's BBG email account and from Webworld Technologies, Inc. ("WTI"), a prime government contractor that provides services to the Air Force that are overseen by Col. Sotomayor. The productions also included materials from the FBI, OIG, and government's case files, including memoranda of interviews (MOI) from the OIG investigation and FD-302s dating back to 2015. The government did not identify any *Brady* materials in the first two productions in either its production letter or the production logs.

On August 12, 2022, counsel conducted a teleconference to discuss the first two productions. Counsel for Col. Sotomayor raised several concerns about the size and organization of the production and reiterated the request for *Brady* and Jencks Act material. Government counsel explained that the investigation into Diane Sturgis had been ongoing for some time and that documents related to the separate conduct for which she had been charged were commingled with documents related to Col. Sotomayor. Counsel further stated that the first two productions included an early production of Jencks Act material and that it represented the bulk of discovery.

On August 23, 2022, defense counsel renewed their request for grand jury testimony and interview memoranda that were relevant to the charges in his indictment. The renewed request letter is attached as Exhibit C. The letter noted that none of the grand jury testimony that had been produced was directly relevant to the charges in Col. Sotomayor's indictment. Counsel also asked the government to provide direction to help identify key documents within the production logs. The government did not respond to this request.

Counsel for Col. Sotomayor sent follow up letters to the government dated August 31 and September 14, 2022. These letters are attached as Exhibits D and E. The letters outlined various technical issues and deficiencies within the productions.

The government made its third production on September 27, 2022. Its production letter is attached as Exhibit F. The third production included over 11,441 documents accounting for over 60,000 pages of material. Despite repeated requests for additional transcripts of grand jury testimony from witnesses relevant to the charges in the indictment, the government failed to provide any additional testimony. Further, the production logs provided by the government were,

similarly, voluminous and did not contain any references to *Brady* materials.[3] Defense counsel sent letters in response to the production on October 4 and October 10, 2022, which are attached as Exhibits G and H.[4] Counsel renewed and reiterated their request for the government to provide all remaining grand jury testimony.

On October 13, 2022, defense counsel requested that the government identify materials in the first three productions, and all productions going forward, with exculpatory information and all other known *Brady* materials. Counsel reiterated the voluminous nature of the first three productions as well as their deficiencies and noted factual circumstances that would warrant identification of these materials. Counsel again stated that the government had failed to provide transcripts of grand jury testimony relevant to the charges in the indictment. The request letter is attached as Exhibit I.

On October 18, 2022, the government made its fourth production. The production letter is attached as Exhibit J. The production contained 13,396 documents accounting for over 38,000 pages of material. For the first time since its August 9 production, the government included a single transcript of grand jury testimony relevant to the charges in the indictment from OIG Special Agent Erin Pallack. The government also provided eight, unprocessed and non-bates stamped, .pst files, without any additional context, accounting for over 98,000 emails and attachments.[5]

On October 20, 2022, the government formally responded to defense counsel's October 13 request that it identify materials with exculpatory information and all other known *Brady* materials.

---

[3] In this production index, under the column labeled "FILEPATH," certain documents were identified as "Hot Docs." Defense counsel's review of these documents found them to be duplicative and irrelevant to the conduct charged in Col. Sotomayor's indictment.

[4] The government has documented interviews with certain key witnesses only with audio files. These interviews, including those of Juan Arevalo and John Ballentine, last for hours. After several requests for substantive interview memoranda and interview transcripts, the government reported that it does not have transcripts or substantive memoranda documenting these interviews. *See* Exh. K at 1.

[5] Because these .pst files were not processed, imaged, and bates stamped by the government, it is impossible to readily identify how many pages of material are contained in the over 98,000 documents.

This letter is attached as Exhibit K. The government declined defense counsel's request. Government counsel noted that, while it had produced 335,000 documents representing over one million pages of material, the discovery related to Col. Sotomayor was "fairly discrete." *See* Exh. K at 2. Further, the government contended that its production logs were not voluminous and unwieldy because they "are similar to ones that [counsel's] firm and other large firms produce in response to grand jury subpoenas" and are "easy to navigate…searchable, and, importantly, contain file path names and other metadata information useful in determining the location of core case file material." *Id*. The government also attached the grand jury testimony (which was given on May 18, 2022, six weeks prior to the indictment) of Robert Sturgis, Diane Sturgis's husband, to the letter.

Defense counsel responded to the government's letter on October 25, 2022. The letter included another request for all remaining grand jury testimony relevant to the charges in the indictment. It is attached as Exhibit L.

### III.   ANALYSIS

Under Rule 16(a)(1)(E)(i), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . .the item is material to preparing the defense." *Brady v. Maryland* requires the government to produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87. The Supreme Court in *Giglio* held that *Brady v. Maryland* applies to impeachment evidence as well.

Under appropriate facts and circumstances, courts have ordered the government "to identify *Brady* material in the discovery that has been produced" to the defense. *United States v.*

*Saffarinia*, 424 F. Supp. 3d 46, 85 (D.D.C. 2020) (quoting *United States v. Cutting*, No. 14-CR-00139-SI-1, 2017 WL 132403, at *9 (N.D. Cal. Jan. 12, 2017)).[6] It is a general rule that the government does not have an affirmative duty to identify "exculpatory evidence within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010).  But that general rule does not preclude courts, in their discretion as a matter of case management, from "ordering identification [of *Brady* material]" by the government.[7]  *United States v. Salyer*, No. CR. S-10-0061-LKK, 2010 WL 3036444, at *2 (E.D. Cal. Aug. 2, 2010); *see also Saffarinia*, 424 F. Supp. 3d at 90–91.  Moreover, the Fifth Circuit in *Skilling* explicitly stated that "[it did] not hold that the use of a voluminous open file can never violate *Brady*." *Skilling*, 554 F.3d at 577.  Rather, the court stated "[c]reating a voluminous file that is unduly onerous to access might raise [*Brady*] concerns. And it should go without saying that the government may not hide Brady material of which it is actually aware in a huge open file in the hope that the defendant will never find it. These scenarios would indicate that the government was acting in bad faith in performing its obligations under Brady." *Id*.

When evaluating whether to exercise their discretion and order the identification of *Brady* materials, courts have examined the following facts and circumstances.  First, courts have evaluated how much material the government has produced in the matter.  In *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998), the court ordered the government to identify *Brady* materials

---

[6] Special Assistant U.S. Attorney Edward Sullivan led the prosecution in *Saffarinia*.
[7] Counsel also notes that United States Magistrate Judge Robert B. Jones, Jr. of the Eastern District of North Carolina, recently exercised such discretion in *United States v. Contech Engineered Solutions, LLC*, No. 5:20-CR-481-FL-2, 2021 WL 714991, *4 (E.D.N.C. Feb. 18, 2021) ("In summary, there are no clear measures of when a large document production fails to fulfill the Government's Brady obligations to disclose exculpatory material in time for its effective use at trial. Decisions appear to be fact-bound and turn on the actions taken by the Government to facilitate the defendant's review of the production, such as whether the production is searchable and whether the Government has provided detailed indices, lists of key documents, a list of the evidence the Government expects to present at trial, and any other assistance to the defendant in navigating the production.")  Based on counsel's research to date, it does not appear that the Fourth Circuit or the Eastern District of Virginia have previously addressed this issue.

because "[t]he government [could not] meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." *See also United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864, *3, *6 (S.D. W. Va. June 12, 2015) (ordering the government to identify *Brady* materials and finding that "the [government] does not comply with the requirement of Brady by merely including all known Brady material within the four million plus pages of discovery.").

Second, courts have considered the length of the government's investigation. In *Salyer*, the court ordered the government to identify *Brady* materials where the government had collected and developed materials during a five-year investigation. *Salyer*, 2010 WL 3036444, at *1, *3. The court rejected the government's argument that the defense could "easily identify [*Brady*] materials within the mass of documents within *months* of post-indictment activity" when the government had collected and reviewed the discovery materials for five years. *Salyer*, 2010 WL 3036444, at *5 (emphasis in original). The court in *Saffarinia* adopted similar reasoning and noted that the government had "the luxury of reviewing [discovery] material on a rolling basis over the course of its three-year investigation," rejecting the government's argument that "it [did] not have an independent obligation to 'comb through the discovery to identify materials that [Mr. Saffarinia] may find valuable in building his case.'" *Saffarinia*, 424 F. Supp. 3d at 88 (internal citations omitted).

Finally, courts have evaluated the nature of the defendant and his or her representation. In *Salyer*, the court held that the circumstances of the case required that the government identify *Brady* materials because (1) there was a "singular, individual defendant, who [was] detained in jail pending trial, and who [was] represented by a relatively small defense team," and (2) "[t]here [was]

no parallel civil litigation, and [the defendant] [did] not have access to voluntary corporate assistance in attempting to find documents needed by the defense." *Salyer*, 2010 WL 3036444, at *7. The court in *Saffarinia* found similar circumstances to be persuasive. The court noted that the defendant was an "individual defendant who neither has the benefit of parallel civil litigation, nor access to voluntary corporate assistance to sift through the massive amounts of documents within the government's voluminous production." *Saffarinia*, 424 F.Supp.3d at 88.

**A. Grand Jury Testimony**

To date, the government's production has only included two transcripts of grand jury testimony directly relevant to the charges in Col. Sotomayor's indictment (Special Agent Erin Pallack and Robert Sturgis). While the government has been unwilling to engage with defense counsel on what testimony remains to be disclosed, Col. Sotomayor has reason to believe that the government has withheld grand jury transcripts of the testimony of other key witnesses, which Col. Sotomayor believes contain exculpatory and impeachment evidence discoverable under *Brady*:

1) Diane Sturgis. As the person who allegedly conspired with and received bribes from Col. Sotomayor, Diane Sturgis is the government's key witness. Despite Diane Sturgis's litany of prior inconsistent statements in her prior sworn testimony throughout the investigation, the government's case will rise or fall largely on her statements and testimony.

2) Lauren Winfield. Ms. Winfield is Diane Sturgis's daughter. She allegedly received payments for providing sham work to WTI in coordination with Diane Sturgis.

3) Special Agent Matthew Lariccia, FBI. Special Agent Lariccia is the lead agent on the investigation into Diane Sturgis and Col. Sotomayor.

4)      Special Agent Nathan Frank, FBI.  Special Agent Frank is an agent that has worked closely with Special Agent Lariccia throughout the investigation into Diane Sturgis and Col. Sotomayor.

5)      Juan Arevalo.  Mr. Arevalo is a government contractor and technologist who works with the Air Force A2Q program, known as "Q-Group," that received funding through a blank purchasing agreement between BBG and WTI and to which Col. Sotomayor has provided services. Mr. Arevalo has also known Col. Sotomayor for over 20 years.  Special Agent Lariccia interviewed Mr. Arevalo and served a subpoena for records and testimony before the grand jury on October 27, 2021.

6)      Crystal DiGiovacchino.  Ms. DiGiovacchino is Mr. Arevalo's wife.  Special Agents Frank and Pallack interviewed Ms. DiGiovacchino and served a subpoena for records and testimony before the grand jury on October 27, 2021.

7)      John Ballentine.  Mr. Ballentine is the CEO of LLH & Associates, LLC, a government prime contractor and subcontracts with Col. Sotomayor's companies.  Special Agent Frank interviewed Mr. Ballentine and served a subpoena for records on December 21, 2021.

8)      Colonel Rex Pelto.  Col. Pelto worked with "Q Group" from 2012 to 2015 and knew Col. Sotomayor from his work with "Q Group."  Special Agent Lariccia served Col. Pelto with a subpoena to testify before the grand jury on March 24, 2022.

9)      Colonel Bradley Readnour.  Col. Readnour began working with "Q Group" in 2016 and knew Col. Sotomayor from his work with "Q Group."  Special Agent Lariccia served Col. Readnour with a subpoena to testify before the grand jury on May 5, 2022.

This list is not exhaustive and there are likely other witnesses who have testified before the grand jury that the government has not disclosed.  If the government would agree to immediately

disclose the testimony of the individuals listed above, as well as all other Jencks Act material (which Col. Sotomayor has repeatedly requested), the *Brady* issues with respect to the grand jury testimony of witnesses would be resolved.

    **B.  Identification of Materials with Exculpatory Information and all known *Brady* Materials**

The circumstances of this matter warrant that the Court, in its discretion, order the government to identify all materials with exculpatory information and all known *Brady* materials in its prior and future productions.  This matter closely resembles the circumstances in *Saffarinia*, *Hsia*, *Blankenship*, and *Salyer*.  First, it cannot be disputed that the government's productions are voluminous.  Col. Sotomayor has received over 335,000 records and over one million pages of materials, portions of which have been unprocessed, and anticipates more productions from the government.  *See* Exh. K at 1.  The production logs are very difficult to navigate and contain an excessive amount of data that render searching within them futile.  Further, the government has ignored all requests from defense counsel to provide any insight into what information in these massive spreadsheets could be "useful in determining the location of core case file material," let alone materials with exculpatory information.  Exh. K at 2.

Second, the government has had a four-year head start in its investigation compared to Col. Sotomayor.  The government has been able to review records from the OIG's original investigation starting in 2015 and materials generated from its own investigation on a rolling basis since 2018.  Having reviewed this mass of materials, it should know "as any litigator would know, what evidence, on its face, significantly detracts from the factual elements which must be proven in a particular case." *Salyer*, 2010 WL 3036444, at *5; *see also Blankenship*, 2015 WL 3687864 at *7 ("the [government] having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than

the [d]efendant to know what evidence might be exculpatory and/or impeachment material under *Brady*.). The government's expectation that defense counsel should sift through the morass of discovery reviewed and accumulated over four years and identify exculpatory materials in mere months is untenable.

Indeed, the government's own description of the discovery in this case reveals its needle in a haystack approach. Despite producing over one million pages of material, the government describes the "discovery relating to [Col. Sotomayor]" as "fairly discrete."[8] Exh. K at 2. This discrete "needle" of relevant and exculpatory materials is buried beneath a mass of "hay" including materials related to Diane Sturgis's criminal conduct in other matters and a large portion of spam email and other irrelevant materials. As the court noted *Saffarinia*, "[t]he Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials." *Saffarinia*, 424 F. Supp. 3d at 85 (quoting *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (citing *Skilling*, 554 F.3d at 577; cf. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided ....")).

Finally, the circumstances of Col. Sotomayor's representation substantially overlap with the facts in *Saffarinia* and *Salyer*. Col. Sotomayor is an individual defendant. He does not have access to any corporate assistance in his defense and he has not been involved in any prior, related, criminal matters or parallel civil litigation. Further, he is represented by a small defense team of two attorneys. These facts are in stark contrast to the government's vast resources which include

---

[8] Based on their four years of investigative work, the government should have no problem in identifying materials with exculpatory information and all other *Brady* materials if the discovery related to Col. Sotomayor is, in fact, "fairly discrete."

at least two federal prosecutors, at least three federal case agents, and the resources of the FBI and OIG.

In sum, Col. Sotomayor's circumstances align with the factors relied upon by Courts when faced with similar requests. These circumstances, with trial rapidly approaching, warrant that the Court exercise its discretion and order the government to identify all materials with exculpatory information and all other *Brady* materials it has produced, and will produce, in this matter.

IV.     **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that the Court should order the government to produce the requested transcripts of grand jury testimony and identify all materials with exculpatory information and all other *Brady* materials it has produced, and will produce, in this matter.

Respectfully submitted,

Dated: October 31, 2022

/s/ *John J. Pease III*
John J. Pease III
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
john.pease@morganlewis.com

Jonathan P. York
1111 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
jonathan.york@morganlewis.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I, Jonathan P. York, Esquire, hereby certify that, on October 31, 2022, I have forwarded by the Court's electronic case filing system, a true and correct copy of the foregoing Motion to Compel Production Pursuant to Rule 16 and *Brady v. Maryland* to the following persons:

> Edward P. Sullivan
> Special AUSA & Senior Litigation Counsel
> Heidi B. Gesch, AUSA
> United States Attorney's Office
> Justin W. Williams United States Attorney's Building
> 2100 Jamieson Avenue
> Alexandria, VA 22314

> */s/ Jonathan P. York*
> Jonathan P. York