IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.         ) | Criminal Action No. 1:22-cr-122 (RDA) |
| ) | |
| JULIO SOTOMAYOR,     ) | |
| ) | |
| Defendant.      ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Julio Sotomayor's ("Defendant") Motion to Compel Production Pursuant to Rule 16 and *Brady v. Maryland* ("Motion to Compel"). Dkt. 20. Considering the Motion to Compel together with Defendant's Memorandum in Support (*id.*), the Government's Opposition (Dkt. 21), and Defendant's Reply (Dkt. 22), this Court denies the Motion to Compel for the following reasons.

### I. BACKGROUND

A Grand Jury sitting in the Eastern District of Virginia returned a six-count indictment against Defendant on July 6, 2022 ("Indictment"), charging him with engaging in a bribery and fraud scheme with Diane Sturgis,[1] a former contracting officer for the Broadcasting Board of Governors ("BBG") (now known as the U.S. Agency for Global Media). Dkt. 1. Count 1 of the Indictment charges Defendant with conspiracy to commit bribery and honest services fraud, in violation of 18 U.S.C. § 371; Count 2 charges Defendant with bribery, in violation of 18 U.S.C.

---

[1] Sturgis has already pleaded guilty to two counts of conspiracy to commit bribery and honest services fraud, including for a related scheme involving Defendant's alleged co-conspirators, whom the Government refers to as Company B and Person B. *See United States v. Diane D. Sturgis*, No. 1:20-cr-00158 (LO) and *United States v. Diane D. Sturgis*, Case No. 1:21-cr-00282 (LO); Dkt. 21 at 4 n.1.

§ 201(b); and Counts 3-6 charge Defendant with honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2. *Id.*

On July 21, 2022, this Court scheduled trial for January 23, 2023, Dkt. 11, and issued a standard order directing the United States to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), Dkt. 13. Since August 9, 2022, the Government has made several discovery productions to Defendant.[2] Dkt. Nos. 20 at 7; 21 at 5. Those discovery productions have included grand jury transcripts, witness interview reports, key exhibits (including the emails and documents referenced in the Indictment), search warrant packages (including probable cause affidavits summarizing the allegations), agent notes, and rough transcripts of most of the recorded interviews. Dkt. 21 at 2. A large portion of the productions consists of electronic communications from Sturgis' Government email account. Dkt. 20 at 7.

On October 31, 2022, Defendant filed the instant Motion to Compel, along with a Memorandum in Support, moving this Court to require the Government to produce all remaining grand jury transcripts and identify material with exculpatory information in its prior and future discovery productions. Dkt. 20 at 8-9. On November 14, 2022, the Government filed its Opposition to Defendant's Motion to Compel (Dkt. 21), and on November 21, 2022, Defendant filed a Reply in support of his Motion to Compel (Dkt. 22).

---

[2] The parties dispute the total number of discovery productions that the Government has made. According to Defendant, the Government has made four discovery productions. Dkt. 20 at 7. The Government, however, represents that it has made five discovery productions. Dkt. 21 at 5. Regardless, the exact number of discovery productions is immaterial to the resolution of the instant Motion to Compel.

## II. STANDARD OF REVIEW

Pursuant to *Brady*, the Government must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87; *see also Giglio v. United* States, 405 U.S. 150, 154 (1972) (extending *Brady* to include impeachment evidence). "At the same time, *Brady* does *not* create a full-scale, constitutionally-mandated discovery right for criminal defendants." *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999). As the Fourth Circuit has explained, "[s]uch a rule would impose an oppressively heavy burden on prosecutors and would drastically undermine the finality of judgments." *Id.*

In addition to meeting its obligations under *Brady* and its progeny, the Government must comply with Federal Rule of Criminal Procedure 16, which "governs discovery in criminal cases." *United States v. Armstrong*, 517 U.S. 456, 461 (1996). Under Rule 16(a)(1)(E)(i), "[u]pon a defendant's request, the Government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the Government's possession, custody, or control and . . . the item is material to preparing the defense."

## III. ANALYSIS

Defendant's Motion to Compel raises two issues. First, Defendant requests that the Court require the Government to produce all remaining grand jury transcripts of testimony from key witnesses. Dkt. 20 at 8. Second, he urges the Court to order the Government to identify all known *Brady* material in the Government's prior and future productions. *Id.* at 8-9. This Court addresses each issue in turn.

A. Grand Jury Transcripts

This Court finds that Defendant's request for any remaining grand jury transcripts is moot since the Government has represented that it has already produced all such documents. Dkt. 21 at 9-10. Defendant concedes this point in his Reply, acknowledging that now that the Government has confirmed in its Opposition that it has produced all grand jury transcripts, this issue has been resolved. Dkt. 22 at 2. Accordingly, Defendant's first request is denied as moot.

B. Identification of *Brady* Material

Defendant next argues that requiring the Government to identify all known *Brady* material is necessary due to the Government's voluminous and overbroad document production. Dkt. 20 at 8-9. He points out that the Government's productions total over 335,000 documents representing over one million pages of material. *Id.* at 2. Defendant further emphasizes that the spreadsheets the Government has provided to defense counsel are very difficult to search and navigate, consisting of between 53 and 57 columns of data for each document and accounting for over 12.35 million separate datapoints. *Id.* He also accuses the Government of taking a "needle-in-the-haystack" approach by commingling documents related to the separate investigation of Sturgis with documents related to his own prosecution, thus making it exceedingly difficult for the defense to locate relevant documents. *Id.* at 10, 18. The Government counters that it has gone well beyond its disclosure obligations. Dkt. 21 at 1. The Government specifically points to the fact that each of its productions came with a detailed, easy-to-navigate index in Excel format. *Id.* at 5. According to the Government, those indices contain a subset of key documents particularly relevant to the Indictment to make it easier for Defendant to locate the evidence supporting the charges against him. *Id.* at 10. The Government also notes that it has assigned sequential bates numbers with different prefixes to identify the source of the material. *Id.* at 6.

The Government further explains that it initiated its investigation into Defendant based on allegations of fraud and corruption involving Sturgis's oversight of another, unrelated vendor called Star-Hawk Solutions, LLC. *Id.* at 6. Therefore, according to the Government, the productions in the instant case include documents concerning Star-Hawk since the cases are intertwined. *Id.* at 6-7. Even then, the Government asserts that it does not intend to use the discovery materials relating to Star-Hawk in its prosecution of Defendant, further narrowing the material in discovery relating specifically to the allegations in the Indictment. *Id.* at 20.

In the case at bar, the Government has, by any applicable standard, produced an immense amount of discovery for defense counsel to scrutinize. To be sure, "[a]s a general rule," the Government does not have an affirmative duty to identify "exculpatory evidence within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010). That general rule does not, however, preclude courts, in their discretion, from requiring the Government to specifically designate any *known Brady* material within a larger mass of disclosed evidence. *See, e.g. United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864, at **6, 8 (S.D.W. Va. June 12, 2015) (ordering the Government to identify in its production any *Brady* material). The *Skilling* court specifically recognized several circumstances involving "bad faith" that may justify a court ordering the Government to identify exculpatory material within a voluminous production. 554 F.3d at 577; *see also United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir. 2010) (adopting *Skilling*'s bad faith approach in deciding whether a defendant was entitled to relief). Such circumstances include the Government "'padd[ing]' an open file with pointless or superfluous information to frustrate a defendant's review" or hiding *Brady* material "in the open file with the hope that [the defendant] would never find it." *Skilling*, 554 F.3d at 577.

Still, every court of appeals, including the Fourth Circuit,[3] that has considered arguments similar to the one Defendant makes here has squarely rejected them. *See e.g.*, *United States v. Yi*, 791 F. App'x 437, 438-39 (4th Cir. 2020), *cert. denied*, 140 S. Ct. 2542 (2020) (unpublished) (noting that "fulfillment of the Government's obligation under *Brady* [does not require] it to identify exculpatory material"); *Skilling*, 554 F.3d at 576-77 (finding the defendant's contention that the Government's voluminous discovery "resulted in the effective concealment of a huge quantity of exculpatory evidence" to be unpersuasive); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) ("Rhoades points to no authority requiring the prosecution to single out a particular segment of a videotape [produced in discovery], and we decline to impose one."); *Warshak*, 631 F.3d at 297 (rejecting the defendant's argument that "the Government was obliged to sift fastidiously through the evidence . . . in an attempt to locate anything favorable to the defense"); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny permit the Government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.").

In support of his argument, Defendant primarily relies on four district court decisions, only one of which is from within the Fourth Circuit, where a court departed from the general rule and ordered the Government to specifically identify *Brady* material within the larger case file. *See* Dkt. 20 at 17 (citing *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020); *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998); *United States v. Blankenship*, No. 5:14-CR-

---

[3] Though the Fourth Circuit's decision in *United States v. Yi*, 791 F. App'x 437, 438-39 (4th Cir. 2020), *cert. denied*, 140 S. Ct. 2542 (2020) is unpublished, it still constitutes persuasive authority. *See e.g.*, *Benedict v. Hankook Tire Company Ltd.*, 295 F. Supp. 3d 632, 646 (E.D. Va.

00244, 2015 WL 3687864 (S.D. W. Va. June 12, 2015); and *United States v. Salyer*, No. CR. S-10-0061-LKK, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010)). While Defendant's citations to out-of-circuit district court cases are well-taken, those cases are not controlling and are factually inapposite. Moreover, the main case he cites from within the Fourth Circuit, *Blankenship*, is distinguishable from the instant case.

In *Blankenship*, the Government produced discovery to the defendant in a less user-friendly way than in the instant case. There, the court differentiated the facts at hand from those in *Skilling* on the ground that the Government in *Skilling* took "additional steps" when producing discovery. 2015 WL 3687864, at *6. Notably, those "additional steps" included producing the material in an electronic and searchable format accompanied by indices, as well as providing "a set of 'hot documents' that [the prosecution] thought were important to its case or were potentially relevant to Skilling's defense." *Id.* Like in *Skilling*, the Government here has provided Defendant with searchable Excel indices. Dkt. 21 at 2, 5, 10, 12. Although the Government did not produce materials explicitly labeled as "hot documents," the prosecution did provide Defendant with grand jury exhibits that include the key documents associated with the allegations against him. *Id.* at 9.

Additionally, a case from within the Fourth Circuit that Defendant cites, *United States v. Contech Engineered Sols. LLC*, No. 5:20-CR-481-FL-2, 2021 WL 714991 (E.D.N.C. Feb. 18, 2021), is also inapposite. There, the defendant complained that the Government's voluminous production of more than 1.6 million pages amounted to an impermissible "document dump" and "that relevant documents [we]re buried in hundreds of thousands of pages that are entirely

---

2018) (explaining that unpublished Fourth Circuit opinions reflect the "persuasive reasoning [of] the Fourth Circuit").

irrelevant to the case." *Contech Engineered Sols. LLC*, 2021 WL 714991, at **1, 4. The magistrate judge agreed but fashioned an intermediate solution. The court did not order the Government to identify *Brady* material in a voluminous discovery production. Instead, the magistrate judge required the Government to simply identify portions of the discovery that it was not planning to utilize in its case-in-chief. *Id.* at *5. In the instant case, even if a similar ruling were appropriate, the Government has already identified for Defendant which materials are not germane to the Indictment. Specifically, the Government has represented that it will not be utilizing any materials relating to Sturgis's oversight of Star-Hawk Solutions, LLC, thus eliminating a significant portion of materials through which defense counsel must sift.[4] Dkt. 21 at 20.

    Lastly, Defendant does not accuse the Government of acting in bad faith and at this point, there is nothing to suggest bad faith on the part of the Government. *See* Skilling, 554 F.3d at 577 (holding open the possibility that the use of a voluminous open file can violate *Brady* if the Government acts in "bad faith"); *see also Warshak*, 631 F.3d at 298 (denying the defendants' motion to compel, in part, because they offered "no indication that the government deliberately concealed any exculpatory evidence in the information it turned over to the defense"). Indeed, the Government has worked to provide meaningful review to Defendant by including searchable Excel spreadsheets with its productions and informing Defendant of the key documents associated with the Indictment. Dkt. 21 at 2, 5, 9, 12. Consequently, the facts at hand do not warrant a departure from the general rule that the Government is not obligated to specifically

---

[4] The Government estimates that more than half of the documents produced relate to this other investigation. Dkt. 21 at 7.

identify *Brady* material. *See Skilling*, 554 F.3d at 576. Accordingly, the Court denies Defendant's second request.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Compel (Dkt. 20) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
December 1, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge